"Any person who . . . (violates the provisions of this statute) . . . shall be guilty of a felony . . ."

Further investigation into the nature of the offense as it bears upon the disciplinary proceedings must await the hearing by the commissioner. Article 15, Section 8(7)(d) provides:

"At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime."

Therefore, respondent's allegation that the committee has no right or cause of action against him is without merit. Respondent's exceptions and motion to dismiss are denied.

### III. *Motion for Admissions*

The admissions respondent seeks are not admissions of fact, but a request for admissions of certain conclusions, some legal and most irrelevant.

The exceptions of prematurity, no right of action and no cause of action are overruled; the motion to dismiss is denied; and the motion for admissions is denied.

269 So.2d 231

James R. GAILLARD

v.

Alwynn CRONVICH, Sheriff of the Parish of Jefferson and Roland Vicknair, Warden of the Jefferson Parish Prison.

No. 52415.

Nov. 6, 1972.

Rehearing Denied Dec. 11, 1972.

·Smith & Scheuermann, Benjamin E. Smith, New Orleans, for plaintiff-relator.

William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Thomas P. McGee, Asst. Dist. Atty., for defendant-respondent.

DIXON, Justice.

In this habeas corpus proceeding the applicant seeks release from the Jefferson Parish prison. After a hearing, the district court denied applicant relief.

On September 20, 1968 applicant was convicted in Orleans Parish of four thefts. He was sentenced to six years at hard labor for each theft, the sentences to be concurrent. On March 6, 1969 applicant pled guilty in Jefferson Parish to four burglaries. He was sentenced to seven years at hard labor for each burglary, the sentences to be concurrent. The Jefferson Parish sentences were made consecutive to the Orleans Parish sentences. Therefore, applicant was effectively sentenced to a thirteen year prison term for the four thefts and four burglaries.

November 2, 1971 Governor John J. McKeithen commuted applicant's Jefferson Parish sentences from seven to five years in length and made the Jefferson Parish sentences *concurrent* with the Orleans Parish sentences. Due to the commutation, applicant Gaillard's Jefferson Parish sentences were shorter than his Orleans Parish sentences, so that the Jefferson Parish sentences would be satisfied upon the completion of the Orleans Parish sentences.

On December 3, 1971 applicant completed his Orleans Parish sentences and was released from custody. He was immediately arrested by Jefferson Parish authorities to begin serving the Jefferson Parish sentences. Although the Jefferson Parish authorities recognized the Governor's power to commute applicant's sentence from seven to five years, they refused to honor that portion of the commutation order which

made the Jefferson Parish and the Orleans Parish sentences concurrent. Jefferson Parish authorities take the position that the Governor has no authority to make consecutive sentences run concurrently.

The executive's power to commute is found in Article V, Section 10 of the Louisiana Constitution of 1921, which provides:

"The governor shall have power to grant reprieves for all offenses against the state; and may, except in cases of impeachment, or treason, upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had, or any two of them, grant pardons, commute sentences, and remit fines and forfeitures; provided, however, that each first offender who has never previously been convicted of a felony shall be eligible for pardon automatically upon completion of his sentence without the aforementioned recommendation in writing. In case of treason he may grant reprieves until the end of the next session of the legislature, in which body the power of pardoning is vested."

The statutory provision is identical (R.S. 15:572).

■ The only limitation on the Governor's commutation power is that he act pursuant to a written recomendation of commutation signed by any two of the following: the lieutenant governor, the attorney general and the presiding judge of the court before which the conviction was obtained. Once this recommendation is received, the Governor has unlimited discretionary power to commute an applicant's sentence.

In this instance, the Governor did not choose to commute applicant's Jefferson Parish sentences completely, as he could have. Rather, he choose to commute the Jefferson Parish sentences to a term shorter than the Orleans Parish sentences and to make the Jefferson Parish sentences concurrent with the Orleans Parish sentences. The result under either method of commutation is the same: the Jefferson Parish sentences are satisfied when applicant completes the Orleans Parish sentences.

■ We find that applicant's commutation was, in all respects, a valid exercise of the executive commutation power. Applicant has satisfied his Jefferson Parish sentences. Therefore, we find applicant to be incarcerated in the Jefferson Parish prison unlawfully.

The judgment of the district court is reversed, and applicant, James R. Gaillard, is ordered discharged from custody.